IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–01935–EWN–KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

and

ALBERT HOFFMAN, as Trustee for the Estate of Debtors Kelly and David Altizer, and
JENNIFER TURNER-RIEGER,

      Intervenors,

v.

OUTBACK STEAK HOUSE OF FLORIDA, INC., and
OS RESTAURANT SERVICES, INC., d/b/a/ Outback Steakhouse,

      Defendants.

_____

**ORDER AND MEMORANDUM OF DECISION**
_____

      This case involves a civil public enforcement action brought by the Equal Employment

Opportunity Commission ("EEOC") alleging that Defendants Outback Steakhouse of Florida,

Inc., and OS Restaurant Partners, Inc., d/b/a Outback Steakhouse have engaged in a pattern or

practice of discriminating against women by failing to hire and promote them and by

discriminating against them in terms and conditions of employment. This matter is before the

court on: (1) "Defendant's Rule 72 Objections to March 1, 2007 Order Denying Motion for

Protective Order," filed March 15, 2007; (2) "Defendants' Motion to Dismiss Plaintiff EEOC's

Nationwide Claims Pursuant to Fed. R. Civ. P. 12(b)(1)," filed June 18, 2007; and (3) "EEOC's

Motion to Strike Defendants' Reply for Failure to Comply with D.C.Colo.L.R. [sic] 7.1C and

7.1A, and Alternative Motion for Leave to File Sur-Reply [sic]," filed August 27, 2007.

Jurisdiction is premised upon the existence of a federal question pursuant to 28 U.S.C.S. § 1331

(LexisNexis 2007).

## FACTS

### 1.     *Factual Background*

I review only the facts relevant to the instant motions, which center around whether

Defendants had sufficient notice of the national scope of the EEOC's claims against them.  OSI

Restaurant Partners, LLC, headquartered in Tampa, Florida was founded in 1988 as a company of

restaurants that owns and operates Outback Steakhouse, a national Australian steakhouse

restaurant.  Outback Steakhouse, http://www.outbacksteakhouse.com/companyinfo/index.aspx

(last visited November 1, 2002).  On August 27, 2003, Plaintiff-Intervenor Jennifer Turner-

Rieger, a former employee of Defendants who worked at a Westminster, Colorado, Outback

steakhouse restaurant, filed a charge of discrimination with the EEOC against Defendants alleging

sex discrimination.  (Defs.' Mot. to Dismiss Pl. EEOC's Nationwide Claims Pursuant to Fed. R.

Civ. P. 12[b][1], Ex. A [Turner-Rieger Charge] [filed June 18, 2007] [hereinafter "Defs.' Mot. to

Dismiss"].)  On June 29, 2004, former Plaintiff-Intervenor Kelly Altizer, another former employee

of Defendants at their Westminster and Thornton, Colorado Outback restaurants, also filed a

charge of sex discrimination with the EEOC against Defendants.[1]  (*Id.*, Ex. B [Altizer Charge].)
Both women alleged Defendants engaged in a pattern or practice of discriminating against female
employees based on gender in terms and conditions of employment, including hiring, firing, job
assignments, promotions, and pay.  (*Id.*, Ex. A [Turner-Rieger Charge], Ex. B [Altizer Charge].)
Both charges centered around Defendants' alleged sex discrimination within the three-state region
of Colorado, Wyoming, and Montana, and particularly on the alleged repeated sexist remarks of
the Joint-Venture Partner ("JVP") for that region, Tom Flanagan.[2]  (*Id.*)

Mr. Flanagan gave undisputed deposition testimony that he is one of approximately sixty
JVPs employed by Defendants, each of whom is responsible for operating all Outback restaurants
within their discrete geographic areas.  (*See id.*, Ex. C at 6 [Flanagan Dep.].)  Each JVP has an
ownership stake in the restaurants in his or her particular region and acts as the area manager of
that region by monitoring standards at all regional restaurants and making promotion decisions
regarding management and Store Proprietors.  (*See id.*, Ex. C at 6, 7, 8–9 [Flanagan Dep.].)
Each of the twenty-one stores in the tri-state region at issue are run by a Store Proprietor  who

---

[1]Ms. Altizer is a "former" Plaintiff because this court found she was judicially estopped
from asserting her claims against Defendants due to her failure to note her EEOC charge in her
bankruptcy filing.  (*See* Order and Mem. of Decision [filed Aug. 27, 2007].)  That order is
currently under reconsideration.  (*See* Intervenor Altizer's Mot. for Reconsideration [filed Sept.
10, 2007].)  At present, Albert Hoffman represents Ms. Altizer's interests as trustee of her
bankruptcy estate.  (*See* Order [filed Sept. 10, 2007].)

[2]Although the charges note the three-state region of Colorado, Wyoming, and Utah, the
parties do not dispute that the region at issue actually includes Colorado, Wyoming, and
Montana.  (Defs.' Mot. to Dismiss at 4; EEOC's Resp. to Defs.' Mot to Dismiss *passim* [filed
July 31, 2007].)

reports directly to Mr. Flanagan.  (*Id.*, Ex. B [Altizer Charge]; Ex. C at 7 [Flanagan Dep.].)  Ms. Altizer complained not only of Mr. Flanagan's behavior, but also of discrimination by the Store Proprietor of the Thornton Outback restaurant, Ben Martinez.  (*Id.*, Ex. B [Altizer Charge].)

### a.      *EEOC Investigation*

After Plaintiff Turner-Rieger and Ms. Altizer filed their respective charges, the EEOC commenced its investigation of their claims.  (*See id.*, Ex. E [8/16/04 EEOC Letter to Defs.].)  On December 5, 2003, Defendants submitted their position statement to the EEOC regarding Plaintiff Turner-Reiger's charge.  (EEOC's Resp. to Defs.' Mot. to Dismiss, Ex. 3 [Defs. Position Statement] [filed July 31, 2007] [hereinafter "EEOC's Resp. to Mot. to Dismiss"].)  Although the statement largely focused on responding to Plaintiff Turner-Reiger's specific allegations regarding her treatment at the Westminster Outback restaurant, it also included some information regarding Defendants' national anti-discrimination policy.  (*Id.*, Ex. 3 at 2 [Defs.' Turner-Reiger Position Statement].)  On August 13, 2005, Defendants submitted a position statement in response to Ms. Altizer's charge.  (*Id.*, Ex. 5 [Defs.' Altizer Position Statement].)  Again, the statement focused largely on responding to Ms. Altizer's claims regarding her experiences at Outback restaurants in Colorado; however, it also described in some detail Defendants' national anti-discrimination policy.  (*Id.*, Ex. 5 at 2–3 [Defs.' Altizer Position Statement].)

On March 10, 2005, the EEOC notified Defendants that it had consolidated Plaintiff Turner-Reiger's and Ms. Altizer's charges.  (Defs.' Mot. to Dismiss, Ex. G [3/10/05 EEOC Letter to Defs.].)  In two information requests and a subpoena regarding these charges, the EEOC asked for a variety of information from Defendants regarding Mr. Flanagan's three-state region.

For example, the EEOC sought information on every management employee who had worked in any store in the region during the relevant time period and all Title VII related complaints filed in connection with any Outback restaurant in the region, as well as information specific to six employees who had been employed in the region.  (*Id.*, Ex. E at 1–2 [8/16/04 EEOC Info. Request], Ex. G at 3–6 [3/10/05 EEOC Info. Request], Ex. I [Subpoena].)  The EEOC also sought more general information from Defendants regarding the job duties, hiring requirements, and compensation structure for all upper-management positions at Outback restaurants, the criteria used for promotion to partner-level positions, records describing the intern program, and records describing the job announcement, application process, and compensation calculation for certain management positions.  (*Id.*)

In response to this information request, Defendants expressed their concern to the EEOC that "[t]he direction of the investigation appear[ed] to be shifting entirely, and the focus d[id] not appear to be on the individuals that filed the[] charges in any way."  (*Id.*, Ex. H at 2 [4/27/05 Defs.' Letter to EEOC].)  Defendants explained:

> Much of the information requested by the EEOC does not appear to have any relevance to Ms. Turner-Reiger [sic] or Ms. Altizer's charge or their allegations. For example, the compensation structure and/or job duties of a [JVP] have no bearing whatsoever on Jennifer Turner-Reiger or Ms. Altizer.  Neither individual has even alleged that they were [sic] — or should have been  — considered for a position as [JVP].  Moreover, the examination of the history and hiring of Managing Partners for the last [twelve] years — across [twenty-two] restaurants — appears to be merely a fishing expedition rather than a pointed inquiry.

(*Id.*)  When responding to the EEOC's information request and subpoena, Defendants relied — in part — on what appear to be their national polices regarding job responsibilities, as well as their

national criteria for hiring and promotions.  (*Id.*, Ex. H [4/27/05 Defs.' Letter to EEOC]; Ex. F [8/16/04 Defs.' Letter to EEOC].)

### b.    *EEOC Determination*

In September 2005, the EEOC issued determinations for both charges, finding "reasonable cause to believe that Charging Part[ies] and a class of females were discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, in the matters alleged."  (*Id.*, Ex. L at 1 [Turner-Rieger Determination], Ex. M at 1 [Altizer Determination].)

### c.    *Conciliation*

The parties engaged in two separate conciliation efforts prior to the EEOC's filing of the instant lawsuit.  (Defs.' Rule 72 Objs. to March 1, 2007 Order Denying Mot. for Protective Order at 9–12 [filed Mar. 15, 2007] [hereinafter "Defs.' Obj."]; Pls.' Jt. Resp. to Defs.' Rule 72 Objs. at 6 [filed Apr. 2, 2007] [hereinafter "Pls.' Resp. to Obj."].)  It is undisputed that the first conciliation effort was limited to Mr. Flanagan's three-state region.  (*See* Pls.' Resp. to Obj. at 6.) On March 27, 2006, the EEOC deemed the first conciliation effort unsuccessful.  (Pls.' Resp. to Mot. to Dismiss, Ex. 7 [3/7/06 EEOC letter to Defs.].)

At Defendants' request, the conciliation process was reopened.  (Pls.' Jt. Resp. to Defs.' Mot. for Protective Order, Ex. 9 [4/18/06 Defs.' Letter to EEOC], Ex. 10 [5/4/06 EEOC's Letter to Defs.] [filed Feb. 29, 2007] [hereinafter "Pls.' Protective Order Resp."].)  On June 29, 2006, the parties met in person for conciliation.  (*Id.*, Ex. 11 [6/29/06 Defs.' Letter to EEOC].) Defendants' Executive Vice President, Chief Legal Officer, and Senior Corporate Employment Counsel made a trip to Denver from company headquarters in Tampa, Florida, to meet with the

EEOC for the purpose of conciliating the cases.  (*Id.*)  After the second conciliation effort,

Defendants penned a letter to the EEOC decrying its failure:

> Outback offered, and you agreed, that the remedial aspect of the relief the EEOC
> is seeking in this case — *e.g.* monitoring Outback's testing and employee survey
> programs, programs to promote women, and additional harassment and
> discrimination education and training, would be acceptable to the EEOC.  Indeed,
> you and Ms. Weeks made it clear that [Defendants'] proposal on remedial efforts
> was sufficient to convince the EEOC that it was no longer necessary to pursue
> class claims.  Regrettably, the negotiations broke down over the two charging
> parties' demand for money — not the remedial remedies [sic] on which the EEOC
> places such high value.

(*Id.*)

> In a July 10, 2006 letter, the EEOC responded:

> You seriously misrepresent the EEOC's position regarding the remedial aspects of
> the relief offered by [Defendants].  EEOC stated that it would be willing to
> consider these efforts, but [Defendants] never provided any evidence of efforts it
> undertook to make the training process accessible to interested females.
> Moreover, EEOC repeatedly emphasized that women are not making it into the
> training programs or into positions as Store Proprietors in any reasonable number
> despite any changes in the training process.

> In addition, EEOC never at any point stated that it would be abandoning the class
> claims.  Specifically, Ms. Weeks stated more than once that, for the limited
> purpose of facilitating resolution in conciliation EEOC was not seeking monetary
> relief for the class at that time.  However, as Ms. Weeks made clear, if this case
> proceeds to litigation, EEOC will be seeking both monetary and injunctive relief
> for the class as well as the Charging Parties.

(*Id.*, Ex. 12 [7/10/06 EEOC's Letter to Defs.].)

After the EEOC commenced the instant litigation, the parties proffered arguably

conflicting accounts from their respective counsel regarding the geographic scope of the second

conciliation efforts.  EEOC counsel Nancy A. Weeks declared that the settlement discussions

related to national, not regional, changes to Defendants' policies.  (EEOC's Resp. to Mot. to

Dismiss, Ex. 12 ¶ 6 [Weeks Decl.].)  Ms. Weeks explained:

> As a result of the EEOC's position, the settlement discussions between EEOC and
> [Defendants] on June 29, 2006, were focused on what [Defendants were] willing
> to change in [their] corporate policies to provide equal training and promotional
> opportunities for all of its female employees.  There was no discussion of
> implementing any special policies applicable only to the three-state region managed
> by Mr. Flanagan.  All of the discussion related to modifying corporate policies
> which would benefit all female employees, not just those in Colorado, Wyoming,
> and Montana.

(*Id.*)  On the other hand, Defendants' counsel, Robert Donovan Jr., affied that he understood the

conciliation process to be regional in scope.  (Defs.' Reply in Supp. of Mot. for Protective Order

Regarding Pl. EEOC's First and Second Request for Production of Docs. and Pl. EEOC's Notice

of Dep. of OS Rest. Servs., Inc. Pursuant to F.R.C.P. [sic] 30[b][6], Ex. 1 ¶¶ 6–8 [Donovan Aff.]

[filed Feb. 23, 2007] [hereinafter "Defs.' Reply in Supp. of Protective Order"].)  He explained

that due to "the charges filed by Ms. Turner-Rieger and Ms. Altizer, the EEOC's investigation of

those two charges, as well as explicit statements to this effect made by the EEOC in

correspondence," Defendants did not "know, understand, or anticipate that the scope of the

conciliation was outside of the three-state region of Colorado, Wyoming and Montana."  (*Id.*, Ex.

1 ¶ 6 [Donovan Aff.].)  Further:

> During the June 29, 2006 meeting, Defendants indicated to the EEOC that
> Defendants would be willing to make certain prospective changes in order to
> satisfy the equitable remedies sought by the EEOC, such as posting notices for
> employees regarding applying for management positions and conducting additional
> training in Flanagan's region above and beyond what was already done in the
> region.  Defendants never stated that they would agree to make these changes on a
> nationwide basis; nor did the EEOC ask that these changes be made on a
> nationwide basis.

(*Id.*, Ex. 1 ¶ 8 [Donovan Aff.].)  Finally, Mr. Donovan stated that "at no time during the June 29, 2006 meeting did the EEOC ever communicate that it was seeking relief on a nationwide basis or that it was attempting to conciliate the matter on a nationwide basis." (*Id.*, Ex. 1 ¶ 9 [Donovan Aff.].)

On September 28, 2006, the EEOC filed suit against Defendants in this court, alleging that since at least 2000, Defendants had engaged in a pattern or practice of denying women equal opportunities in hiring, promotion, training, and terms and conditions of employment.  (Compl. and Jury Demand ¶ 8 [filed Sept. 28, 2006] [hereinafter "Compl."].)  The specifics of the complaint reviewed Plaintiff Turner-Rieger and Ms. Altizer's claims regarding their treatment by Messrs. Flanagan and Martinez.  (*Id.* ¶¶ 9–12.)  On November 21, 2006, in response to Defendants request to stay the litigation in order to explore settlement discussions, the EEOC sent Defendants a written proposal of the terms under which it would agree to stay the litigation. (Pls.' Protective Order Resp., Ex. 14 [11/21/06 EEOC's Letter to Defs.].)  The proposal explicitly sought nationwide data from Defendants and explained the EEOC was attempting to "elicit the information necessary to ascertain the scope of the class for whom EEOC seeks relief." (*Id.*)

On January 16, 2007, Defendants filed a motion for a protective order, asking Magistrate Judge Boyd N. Boland to limit discovery to Mr. Flanagan's three-state region.  (Defs.' Mot. for Protective Order Regarding Pl. EEOC's First and Second Request for Prod. of Docs. and Pl. EEOC's Notice of Dep. of OS Rest. Servs., Inc. Pursuant to F.R.C.P. [sic] 30[b][6] [filed Jan. 16, 2007] [hereinafter "Defs.' Mot. for Protective Order"].)  Defendants argued that during the

investigation and conciliation process, they had been led to believe any class claims against them were limited to Mr. Flanagan's three-state region.  (*Id.* at 1–8.)  Further, according to Defendants, it was only at a December 7, 2006, Federal Rule of Civil Procedure 26(f) conference that they were informed the EEOC intended to prosecute nationwide claims against them.  (*Id.* at 8.)

On March 1, 2007, the magistrate issued an order memorializing his oral decision to permit Plaintiffs to seek nationwide discovery.  (Order [filed Mar. 1, 2007.].)  The magistrate found both the EEOC's investigation and conciliation were not limited to a three-state region, but were — at least in part — national in scope.  (Defs.' Obj., Ex. A at 27–28 [Tr.].)  Based on this factual determination, the magistrate found that Defendants had received adequate notice of the national scope of Plaintiffs' claims.  (*Id.*)

**2.      *Procedural History***

On September 28, 2006, the EEOC filed a complaint in this court against Defendants alleging sex discrimination.  (Compl.)  On December 4, 2006, Plaintiff Turner-Rieger and Ms. Altizer filed an intervenor complaint alleging same.  (Compl. in Intervention and Jury Demand [filed Dec. 4, 2006].)  In January 2007, all plaintiffs filed an amended complaint making substantially the same allegations as their initial complaints.  (*See* Am. Compl. in Intervention and Jury Demand [filed Jan. 26, 2007]; EEOC's First Am. Compl. and Jury Demand [filed Jan. 30, 2007].)

On January 16, 2007, Defendants filed a motion for a protective order, in part, seeking to limit discovery to Mr. Flanagan's three-state region.  (Defs.' Mot. for Protective Order.)  On

March 1, 2007, the magistrate denied Defendants' motion as it related to nationwide discovery. (Order [filed Mar. 1, 2007].)  On March 15, 2007, Defendants objected to the magistrate's decision, arguing that he clearly erred in ruling that Defendants had adequate notice of the national scope of the EEOC's investigation and conciliation efforts.  (Defs.' Obj.)  On April 2, 2007, Plaintiffs responded to the objection.  (Pls.' Resp. to Obj.)  Defendants did not reply in support of their objection.

On June 18, 2007, Defendants filed a motion to dismiss the EEOC's nationwide claims, arguing this court lacks subject matter jurisdiction to hear the claims because the EEOC failed to exhaust its administrative remedies.  (Defs.' Mot. to Dismiss.)  On July 31, 2007, the EEOC responded to the motion.  (EEOC's Resp. to Mot. to Dismiss.)  On August 9, 2007, Defendants replied in support of their motion.  (Defs.' Reply in Supp. of Mot. to Dismiss Pl. EEOC's Nationwide Claims Pursuant to Fed. R. Civ. P. 12[b][1] [filed Aug. 9, 2007] [hereinafter "Defs.' Reply in Supp. Mot. to Dismiss"].)

On August 27, 2007, the EEOC filed a motion to strike Defendants' reply or, in the alternative, file a surreply, because Defendants improperly raised a motion to strike in their reply. (EEOC's Mot. to Strike Defs.' Reply for Failure to Comply with D.C.Colo.L.R. [sic] 7.1C and 7.1A, and Alternative Mot. for Leave to File Sur-Reply [sic] [filed Aug. 27, 2007].)  On August 29, 2007, Defendants responded to the motion.  (Defs.' Resp. to EEOC's Mot. to Strike Defs.' Reply for Failure to Comply with D.C.Colo.L.R. [sic] 7.1C and 7.1A and Alternative Mot. For Leave to File Sur-reply [sic]" [filed Aug. 29, 2007] [hereinafter "Defs.' Resp. to Mot. to Strike"].)  On September 13, 2007, the EEOC replied in support of its motion.  (EEOC's Reply in

Supp. of Mot. to Strike and Alternative Mot. to File Sur-reply [sic] [filed Sept. 13, 2007]

[hereinafter "EEOC's Reply in Supp. of Mot. to Strike"].)  These issues are fully briefed and ripe

for review.

## ANALYSIS

*1.      Standard of Review*

Federal courts are courts of limited jurisdiction, empowered to hear only those cases

authorized and defined in the Constitution which have been entrusted to them under a

jurisdictional grant by Congress.  *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th

Cir. 1994) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 [1986]) (further

citations omitted).  "A court lacking jurisdiction cannot render judgment but must dismiss the

cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."

*Basso v. Utah Power & Lighting Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may move to dismiss a

complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1) (2007).

"The party invoking jurisdiction bears the burden of establishing such jurisdiction" by a

preponderance of the evidence.  *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th

Cir. 2004); *Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1272 (10th Cir. 2003).  A plaintiff

"has the duty to support jurisdictional allegations in a complaint by competent proof of the

supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."  *Pytlik*

*v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1379 (10th Cir. 1989).  Moreover, "[w]here a party attacks

the factual basis for subject matter jurisdiction, the court does not presume the truthfulness of

factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *Radil*, 384 F.3d at 1224 (citing *Pringle v. United States*, 208 F.3d 1220, 1222 [10th Cir. 2000]).  Indeed, the court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts under 12(b)(1)." *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987).

**2.      *Evaluation of Claims***

There are three motions presently before the court: (1) Defendants' objection to the magistrate's order permitting nationwide discovery; (2) Defendants' motion to dismiss for lack of subject matter jurisdiction due to the EEOC's failure to exhaust its administrative remedies; and (3) the EEOC's motion to strike Defendants' reply in support of their motion to dismiss or, in the alternative, file a surreply.  (Defs.' Obj.; Defs.' Mot. to Dismiss; EEOC's Mot. to Strike.)  The first two motions center on the question of whether Defendants had adequate notice that the claims against them were potentially nationwide in scope.  Before addressing them, however, I turn to the EEOC's motion to strike, because its outcome directly effects the outcome of the other two motions before the court.

**a.      *Motion to Strike***

At issue in the EEOC's motion to strike is a document (hereinafter "Challenged Document") relied upon by the magistrate in his decision to allow nationwide discovery, as well as by Plaintiffs in their responses to Defendants' objection and motion to dismiss.  (*See* Defs.' Obj., Ex. A at 5 [Tr.]; Pls.' Resp. to Obj. at 4; EEOC's Resp. to Mot. to Dismiss at 4.)  The Challenged Document purports to be an information request from the EEOC to Defendants,

-13-

seeking what the EEOC argues to be national data from Defendants.  (EEOC's Resp. to Mot. to Dismiss, Ex. 2 at 1–3 [Challenged Doc.].)  In particular, without limiting the request to a particular geographic region, the Challenged Document seeks information regarding Defendants' harassment, promotions, training, and seniority policies.  (*Id.*)  Further, the Challenged Document requests Defendants: "State whether any other individual has complained to any supervisor or manager concerning the conduct described in the Charge of Discrimination."  (*Id.*, Ex. 2 at 2 [Challenged Doc.].)

Defendants, in their reply in support of their motion to dismiss, question — for the first time — the authenticity of the Challenged Document, based on their recent discovery that they have no record of receipt of the document.  (Defs.' Reply in Supp. of Mot. to Dismiss at 7–10.)  The EEOC, in turn, filed a motion to strike Defendants' reply as it related to the Challenged Document or, in the alternative, leave to file a surreply.  (EEOC's Mot. to Strike.)  The EEOC contends: (1) Defendants' reply should be stricken because it violated Local Rules 7.1C and 7.1A by requesting the court strike the Challenged Document within the context of Defendants' motion to dismiss, rather than under separate cover and after conferring with opposing counsel; or (2) if Defendants' reply is not stricken, the EEOC should be permitted to file a surreply in response to the new arguments presented in Defendants' reply.  (*Id.*)  The EEOC does admit that a "more careful review" of its records revealed that it "cannot definitively establish that Defendants received the document."  (*Id.* at 2.)  Further, in its proposed surreply, the EEOC withdraws the Challenged Document because it was not able to uncover competent evidence that Defendants received the document during the EEOC investigation.  (EEOC's Sur-reply [sic] in Resp. to

Defs.' Reply in Supp. of Mot. to Dismiss Pl. EEOC's Nationwide Claims at 4–5 [filed Aug. 27, 2007] [hereinafter "EEOC's Surreply Against Mot. to Dismiss"].)

Local Rule 7.1C requires that motions be filed under separate cover.  D.C.Colo.LCivR 7.1C (2007).  Defendants contend their challenge to the authenticity of the Challenged Document is not a motion to strike, but simply a proper objection to the authenticity of a document central to the court's consideration of the motion to dismiss.  (Defs.' Resp. to Mot. to Strike.)   I wholeheartedly agree with Defendants.  A challenge to the authenticity of a document may be — and often is — made in support of or in response to a motion to dismiss.  *Cf. GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) (permitting courts to consider documents central to the plaintiff's claims that are incorporated by reference or partially quoted in the complaint in ruling upon a motion to dismiss, so long as the authenticity of those documents is not in dispute).  Accordingly, I find Defendants did not violate Local Rules 7.1C. Rule 7.1A requires counsel for a moving party to attempt to resolve the disputed matter with opposing counsel before filing a motion in this court.  D.C.Colo.LCivR 7.1A (2007).  Because Defendants did not file a separate motion when they disputed the authenticity of the Challenged Document, nothing in the rule required they confer with counsel.  Thus, I find Defendants are not in violation of this court's Local Rules.

Now, I must determine whether to grant the EEOC leave to file a surreply.  When a party puts forth new arguments in a reply brief, a court may avoid error by either: (1) choosing not to rely on the new arguments in determining the outcome of the motion; or (2) permitting the non-moving party to file a surreply.  *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192

-15-

(10th Cir. 2006) (citing *Beaird v. Seagate Tech.*, 145 F.3d 1159, 1164–65 [10th Cir. 1998]).

Defendants contend their inauthenticity argument is not new, but is instead related to a citation in

their motion to dismiss noting that Plaintiffs bear the burden of establishing jurisdiction by

presenting affidavits or other evidence to satisfy their burden.  (Defs.' Resp. to Mot. to Strike at

4.)  Defendants apparently contend that this citation should have led Plaintiff to submit an

affidavit, declaration, verified statement under penalty of perjury, or other foundation establishing

the authenticity of every document it relied upon to establish jurisdiction.  (*Id.* at 4–5.)  I am not

sure whether Defendants' argument is more laughable or disingenuous.  Clearly, the authenticity

argument is "new," and should have been raised prior to the reply.

Defendants apparently did not discover the basis for challenging the document until just

prior to submitting their reply brief.  (*See* Defs.' Reply in Supp. of Mot. to Dismiss at 6–10.)  Yet,

Defendants proffer no reason why they did not or could not have made this discovery at an earlier

date, particularly when they knew this document would be considered by the magistrate in

deciding their motion for a protective order.  (*See id.*)  This court frowns upon such sloppy work

by counsel that results in the needless creation of significant additional work the parties involved

and this court.  As much as it pains me to reward Defendants' lack of diligence, I cannot turn a

blind eye to the EEOC's admission of its inability to confirm that it actually sent the Challenged

Document to Defendants.  I find that, in this case, the interests of justice require me to consider

Defendants' reply and accept the EEOC's surreply.  Thus, the EEOC's motion to strike is denied,

but its alternative motion for leave to file a surreply is granted.

-16-

**b.**      ***Motion to Dismiss EEOC's Nationwide Claims***

Defendants seek to dismiss the EEOC's nationwide claims because the EEOC has failed to

exhaust its administrative remedies with respect to those claims.  (Defs.' Mot. to Dismiss.)

Specifically, Defendants argue the EEOC's nationwide claims are not like or reasonably related to

the underlying charges, nor are they within the scope of EEOC's investigation that could

reasonably be expected to grow out of the charges.  (*Id.*)  The EEOC counters that its

investigation, determination, and conciliation efforts were sufficiently national in scope to put

Defendants on notice of the potential for nationwide action.  (EEOC's Resp. to Defs.' Mot. to

Dismiss.)

**i.**      ***Preliminary Matter: The Magistrate's Order***

As an initial matter, I dispense with EEOC's argument that "the [m]agistrate [j]udge's

***factual*** determination that the EEOC's investigation was not limited to a three-state region is

dispositive of the instant motion."  (EEOC's Surreply Against Mot. to Dismiss at 7 [emphasis in

original] [filed Aug. 27, 2007].)  Although it is true that the magistrate's oral order included

findings that the EEOC's investigation and conciliation efforts were national in scope, the EEOC

has pointed to no caselaw — and this court's research has revealed none — suggesting a federal

district court deciding a motion to dismiss is bound by the factual findings of a magistrate made in

the context of a non-dispositive motion related to discovery issues.  (*See* EEOC's Resp. to Mot.

to Dismiss; EEOC's Surreply Against Mot. to Dismiss.)  The EEOC's argument is particularly

unavailing considering the magistrate expressly relied upon the now-withdrawn Challenged

Document in making his findings.  (Defs.' Obj., Ex. A at 5 [Tr.].)  Therefore, I find this court is

not bound by the factual determinations made in the magistrate's Order.

ii.     *Applicable Law*

The 1972 amendments to Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e,

*et seq.* (LexisNexis 2007) ("Title VII") gave the EEOC "broad enforcement powers by

authorizing it to bring civil actions in federal district court against private employers reasonably

suspected of violating Title VII.  The new enforcement power was intended not only to bring

about more effective private enforcement, but to vindicate the public interest."  *EEOC v. St.*

*Louis-S.F. Ry. Co.*, 743 F.2d 739, 743–44 (10th Cir. 1984); *see* 42 U.S.C.S. § 2000e–5(f)(1)

(LexisNexis 2007).  Title VII, however, places a strong emphasis on administrative, rather than

judicial, resolution of disputes.  *EEOC v. Zia*, 582 F.2d 527, 529 (10th Cir. 1978).  In fact, the

statute "establishes a comprehensive administrative procedure whereby the parties involved,

including the EEOC, have the fullest opportunity to resolve charges of discrimination without

resorting to the courts."  *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1184–85 (4th Cir. 1981).

Specifically, in order for the EEOC to have standing to bring suit in federal court against an

employer, there must have been: (1) a charge filed with the EEOC against the employer; (2)

notice of the charge to the employer; (3) investigation by the EEOC; (4) a determination of

reasonable cause; and (5) a good faith effort at conciliation.  *Id.* at 1185; *accord EEOC v. Harvey*

*Walner & Assocs.*, 91 F.3d 963, 968 (7th Cir. 1996).  "Two important purposes are served by this

preadjudicative administrative procedure: first, the employer is fully notified of the violation

alleged by the charging party; and second, the EEOC has the opportunity to consider all the

-18-

charges and to attempt their resolution through conciliation and voluntary compliance." *Am. Nat'l Bank*, 652 F.2d at 1185. Where the EEOC fails to exhaust administrative remedies prior to bringing a public enforcement suit pursuant to Title VII, a court lacks subject matter jurisdiction over the action. *Am. Nat'l Bank*, 652 F.2d at 1185; *cf. Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (noting that in the context of individual Title VII suits, "[e]xhaustion of administrative remedies is a 'jurisdictional prerequisite'").

### iii.     *Scope of EEOC Charges*

Defendants urge that because the original EEOC charges were not national in scope, and thus not "like or reasonably related" to the instant national claims, this court lacks subject matter jurisdiction over the EEOC's national claims. (Defs.' Mot. to Dismiss at 10–12, 15–17; Defs.' Reply in Supp. of Mot. to Dismiss at 3–4.) In support, Defendants cite several cases articulating the administrative prerequisites for individual plaintiff lawsuits under Title VII, as opposed to those for EEOC civil enforcement actions. (*See* Defs.' Mot. to Dismiss at 10–12, 15–17.) Defendants mischaracterize the law as it relates to the initial charges filed. It is true that some courts have applied the standard for individual lawsuits — that the civil complaint be "like or related to allegations contained in the charge" — to civil enforcement actions. *See EEOC v. UPS*, 94 F.3d 314, 318 (7th Cir. 1996), *overruled in relevant part by EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 832–33 (7th Cir. 2005); *EEOC v. Ford Motor Co.*, 573 F. Supp. 755, 756 (D. Colo. 1983). Those courts, however, have generally failed to consider whether the EEOC is subject to the same jurisdictional prerequisites as private parties.

I find that although private litigants are bound in a significant way by the charges they file with the EEOC, a civil enforcement suit by the EEOC is *not* closely circumscribed by those charges, because the EEOC, after all, is enforcing the broad rights of the public as a whole, rather than those of a few individuals. *Catepillar*, 409 F.3d at 833 (citing *Gen. Tele. Co. v. EEOC*, 446 U.S. 318, 331 [1980]).  As the Fourth Circuit has aptly explained: "The charge merely provide[s] the EEOC with a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices; and that investigation may well disclose . . . illegal practices other than those listed in the charge." *EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 364–65 (4th Cir. 1976) (internal quotations omitted); *accord EEOC v. Astra USA*, 94 F.3d 738, 746 (1st Cir. 1996).  If the EEOC discovers additional illegal practices during the course of reasonable investigation of the charge:

> it is neither obliged to cast a blind eye over such discrimination nor to sever those facts and the discrimination so shown from the investigation in process and file a Commissioner's charge, thereon, thereby beginning again a repetitive investigation of the same facts already developed in the ongoing investigation.

*Gen. Elec.*, 532 F.2d at 365.  In the instant case, nothing in the charge indicates that Plaintiff Turner-Reiger or Ms. Altizer's claims extended beyond Mr. Flanagan's region.  (*See* Defs.' Mot. to Dismiss, Ex. A [Turner-Rieger Charge], Ex. B [Altizer Charge].)  Nonetheless, based on the foregoing, I find the regional scope of the underlying charges does not — standing alone — prevent the EEOC from pursuing nationwide claims.

My finding that the EEOC is not closely bound to the specifics of the original charge does not mean that the EEOC may bring a civil action regarding any discrimination it uncovers in the

course of an investigation.  Instead, as noted above, the EEOC must give adequate notice to a

defendant-employer of the nature of the charges against it, as well as an opportunity to resolve all

charges through conciliation.  *Am. Nat'l Bank*, 652 F.2d at 1185.  In other words:

> [T]he original charge is sufficient to support EEOC administrative action, as well
> as an EEOC civil suit, for any discrimination stated in the charge itself or
> discovered in the course of a reasonable investigation of that charge, provided
> such additional discrimination was included in the EEOC "reasonable cause"
> determination and was followed by compliance with the conciliation procedures of
> [Title VII].

*EEOC v. Hearst Corp.*, 553 F.2d 579, 580 (9th Cir. 1976).

### iv.     Investigation

Defendants next contend that the EEOC's investigation of the charges was regional, not

national, in scope, and, thus, could not have served to put them on notice of the potentially

nationwide claims against them.  (Defs.' Mot. to Dismiss at 18–21.)  Defendants point out that

many of the EEOC's information requests were specific to Mr. Flanagan's three-state region.

(*Id.*)  It is true that in all instances in which the EEOC sought information about individual

employees or specific restaurants, it asked for information relevant *only* to Mr. Flanagan's region.

(*Id.*, Ex. E at 1–2 [8/16/04 EEOC Info. Request], Ex. G at 3–6 [3/10/05 EEOC Info. Request],

Ex. I [Subpoena].)  For example, the EEOC sought to know: (1) the date Mr. Flanagan became a

JVP and the date on which each store came under his responsibility; (2) every management

employee who worked at any store in Mr. Flanagan's region during the time he was JVP; (3)

whether those management employees were promoted internally or were hired from outside

Defendants' organization; (4) whether those management employees satisfied the internal or

external hire or promotion criteria for the position of Store Proprietor; (5) "all Title VII related-discrimination, harassment, or retaliation complaints filed internally or with outside agencies in connection with any Outback Steak facility *within Tom Flanagan's region*;" and (6) the personnel files for Messrs. Flanagan and Martinez, Richard Russ, Store Proprietor of the Westminster Store where Plaintiff Turner-Rieger had worked, and Darin Shultz and Robert Davis, who Plaintiff Turner-Rieger alleged were promoted to Store Proprietor instead of her. (*Id.* [emphasis added].)

The EEOC counters that, in several instances, it asked for "information concerning the company's corporate policies, procedures, and practices, particularly with regard to promotional opportunities for women, which [were] national in scope." (EEOC's Resp. to Mot. to Dismiss at 4.) Moreover, the EEOC points out that Defendants responded to its information requests with statements putting their national practices at issue. (EEOC's Resp. to Mot. to Dismiss at 5–6.) For instance, Defendants stated that they operated numerous restaurants "'throughout the country,'" and they introduced "all employees to [their] Principles and Beliefs upon hiring." (*Id.* [quoting *id.*, Ex. 3 at 2 (12/5/03 Defs.' Letter to EEOC)], Ex. 5 at 2 [9/13/04 Defs.' Letter to EEOC].) According to the EEOC, Defendants responded with information regarding hiring, firing, and promotions applicable to all restaurants, not just the three-state region. (*Id.* at 7.) Finally, the EEOC argues Defendants explicitly recognized the nationwide scope of the investigation when they protested that the EEOC was seeking information irrelevant to the specific charges. (*Id.* at 6.)

As set forth below, I find the EEOC has failed to carry its burden of showing that its investigation put Defendants on notice of the national scope of the potential claims against

Defendants.  The Tenth Circuit has not yet addressed whether the EEOC may bring nationwide

claims against a national employer-defendant when the EEOC investigation centers largely around

a particular region of the country.  Outside of the Tenth Circuit, there is seemingly conflicting

caselaw on this point.

Defendants rely heavily on *EEOC v. Jillian's of Indianapolis, IN, Inc.*, 279 F. Supp. 2d

974 (S.D. Ind. 2003).  (*See* Defs.' Mot. to Dismiss at 18–21.)  In *Jillian's*, four male employees,

all of whom were employed at the defendant-employer's Indianapolis location, filed charges with

the EEOC alleging sex discrimination.  279 F. Supp. 2d at 976.  During the EEOC's investigation,

it sought and received information and documents related to only the Indianapolis facility, such as

job codes, personnel files, and employee applications, and did not investigate any Jillian's facility

other than the Indianapolis location.  *Id.* at 981.  The EEOC did not seek information about

employees at facilities other than the Indianapolis facility, nor did it object to Jillian's production

of information that was limited to the Indianapolis facility.  *Id.*  An amended determination by the

EEOC concluded: "Respondent maintains or has maintained sex segregated job

classifications . . . .  Respondent has failed to hire or transfer Charging Party and a class of

similarly situated male applicants and employees to server or hostess duties."  *Id.* at 977 (internal

quotations omitted).  Ultimately, the court was "unpersuaded by the EEOC's evidence that

Jillian's knew or should have known that it was subject to a nationwide class action," in part

because the EEOC did not "seek conference, conciliation or persuasion with respect to a

nationwide class."  *Id.* at 982.  The court concluded that the EEOC's use of the term "class" in its

reasonable cause determination could only have been referring to a "*local* class," and the EEOC

could not "seek[] to bootstrap this language . . . into its nationwide class." *Id.* at 983 (emphasis in original).

The EEOC argues *Jillian's* is not only a minority opinion, but is also distinguishable from the instant case because the original charge in *Jillian's* did not allege a pattern or practice of discrimination and the EEOC's investigation and conciliation did not involve corporation-wide policies. (EEOC's Resp. to Mot. to Dismiss at 19–20.)  The EEOC, in turn, relies heavily on *American National Bank*, as did the magistrate in his decision to permit nationwide discovery. (*Id.* at 16–17; Defs.' Obj., Ex. A at 27–28 [Tr.].)  In that case, the EEOC received a charge from a single individual who alleged she was discriminated against at the bank's Suffolk, Indiana branch.  654 F.2d at 1181.  The EEOC's determination discussed discrimination at the Suffolk branch only and in a footnote even rejected as irrelevant information on hiring at Portsmouth, Indiana branches.  *Id.*  The court recognized that the bank's attorney, who participated in the conciliation effort, "presumably represented not only the Suffolk branch[], but the entire organization."  *Id.* at 1186.  The EEOC brought suit alleging that the bank engaged in a pattern or practice of discrimination at the Suffolk and Portsmouth branches — presumably all of the bank's branches.  *Id.* at 1181.  Over the bank's objection, the court held that the EEOC's lawsuit was not limited to the Suffolk branch, "because there was, through the EEOC's investigation and attempted conciliation with regard to Suffolk, adequate notice to the defendant of the practices under investigation and ample opportunity for conciliation concerning those practices."  *Id.* at 1185.  "Had the conciliation efforts been successful, given the common control over and similar practices at the two cities' branches, whatever changes were to be instituted at the Suffolk

-24-

branches would no doubt logically and necessarily have been made at the Portsmouth branches as well." *Id.*

Defendants distinguish this case on two bases. First, the case involved a few bank branches in two cities that were "subject to unified supervision and control and [were] using similar hiring practices." (Defs.' Reply in Supp. of Mot. to Dismiss at 13 [internal quotations omitted].) In the instant case, argue Defendants, only Mr. Flanagan's three-state region is subject to his unified supervision and control as JVP. (*Id.*) Second, Defendants contend that "[b]ecause the EEOC never investigated any particular restaurants or interviewed any employees from outside of [Mr.] Flanagan's region, [they do] not even know whether and how hiring practices vary from region to region." (*Id.* at 13–14.)

In the context of a nationwide civil enforcement suit — as opposed to a regional suit potentially implicating a limited number of branches in only two cities — I find *American National Bank* unpersuasive. I find the EEOC's investigation of Defendants was only "national" to the extent it made general inquiries into what are presumably national hiring, firing, promotion, and compensation policies of Defendants. Such inquiries are simply insufficient to put Defendants on notice that charges regarding events and personnel in Mr. Flanagan's three-state region had the potential to lead to a nationwide civil suit. The problem with the EEOC's argument is that national companies will often employ policies and practices that are also national. Significantly, the EEOC would be remiss in *not* seeking information regarding such policies and practices whenever there is a charge of discrimination against a national employer, even if that charge is limited to a single store or a narrow region. This means that anytime a charge is leveled against

-25-

even a single store or restaurant in a national chain, that chain's nationwide policies and procedures are likely to become part of the EEOC's investigative record. I agree with Defendants that "[i]f the EEOC is correct that its request for general information such as policies and procedures are construed to be evidence that the EEOC was conducting a nationwide investigation, then nearly all charges [against national employers] investigated by the EEOC will in effect be transformed into a nationwide pattern or practice action." (Defs.' Reply in Supp. of Mot. to Dismiss at 10.) Neither party contends that such an outcome would be acceptable under Title VII. (*See* Defs.' Mot. to Dismiss; EEOC's Resp. to Mot. to Dismiss; Defs.' Reply in Supp. of Mot. to Dismiss; EEOC Surreply Against Mot. to Dismiss.) Accordingly, in this case, I find the EEOC's request for general company policies during an investigation that otherwise was focused on a single three-state region did not provide Defendants with adequate notice that the EEOC's investigation was national in scope.[3]

Similarly, that Defendants' responses to the EEOC's information requests included some of their national policies is similarly insufficient to show Defendants were on notice as to the national scope of the investigation. As a national chain, one can only expect that questions about

---

[3]*After* filing the instant law suit, the EEOC sought information for Defendants that — had the EEOC sought such information during its investigation — may well have served to put Defendants on notice of the national scope of the claims against them. (*See* Pls.' Protective Order Resp., Ex. 14 [11/21/06 EEOC Letter to Defs.].) The EEOC asked for extensive information about "current and/or former employees including employees *working throughout the United States.*" (*Id.* [emphasis added].) The EEOC went on to explain that this data was "necessary to ascertain the scope of the class for whom EEOC seeks relief." (*Id.*) Had the EEOC made a request for such national statistical data prior to filing suit, my finding here might have been different.

Defendants' policies and procedures may result in the production of documents that reflect nationwide policies and procedures, even if the potential charges are relevant to only a single restaurant or a region.

Finally, I find Defendants' protest of the breadth of the EEOC's information request did not show an awareness of the national scope of the investigation.  Defendants did complain that the EEOC was seeking information irrelevant to Plaintiff Turner-Reiger's and Ms. Altizer's specific charges.  (Defs.' Mot. to Dismiss, Ex. H at 2 [4/27/05 Defs.' Letter to EEOC].)  However, Defendants suggest their concern was that the EEOC was expanding its case to cover female employees throughout *Mr. Flanagan's three-state region*, not the entire country.  (*See id.*)  Defendants stated:  "[T]he examination of the history and hiring of Managing Partners for the last [twelve] years — across [twenty-two] restaurants [those in Mr. Flanagan's tri-state region] — appears to be merely a fishing expedition rather than a pointed inquiry."  (*Id.*)  This passage strongly suggests that Defendants saw the fishing pond as *regional*, rather than national.  Based on the foregoing, I find the EEOC's investigation did not serve to put Defendants on notice of the national scope of the potential charges against them.

### v.      *Determination*

The EEOC argues that its reasonable cause determination was not limited to a three-state region and, thus, served to notify Defendants of the national scope of the charges against them. (EEOC's Resp. to Mot. to Dismiss at 8.)  I disagree.  In September 2005, the EEOC indicated it had "reasonable cause to believe that Charging Part[ies] and a class of females were discriminated against in violation of Title VII . . . in the matters alleged" regarding both charges.  (Defs.' Mot.

to Dismiss, Ex. L at 1 [Turner-Rieger Determination], Ex. M at 1 [Altizer Determination].)

Because, as discussed above, both the charges and the investigation centered around Mr.

Flanagan's three-state region, Defendants had every reason to believe that the "class" the EEOC

was referring to in its determination was a *regional* class.  *See Jillian's*, 279 F. Supp. 2d at 983

(finding, under similar facts, that the EEOC's reference in its determination to a "class of

similarly-situated male employees and applicants" was referring to a "local class").  The EEOC

argues that "[n]either the charges nor the EEOC's determinations indicates that the discrimination

alleged was limited to Mr. Flanagan's three-state region."  (EEOC's Resp. to Mot. to Dismiss at

8.)  That may well be.  However, neither the charges, the investigation, nor the determination

*affirmatively indicate* that the discrimination alleged was in fact *national* in scope.  It is, after all,

*the EEOC's duty* to put Defendants on notice of the scope of the charges against them in order to

give every incentive and allowance for settlement of the claims prior to filing suit in court.  *Am.*

*Nat'l Bank*, 652 F.2d at 1184–85.  Under the specific facts of this case, I find the EEOC's failure

to indicate with more specificity the potential national scope of the claims against Defendants was

insufficient to put them on notice of the scope of the potential for a national lawsuit against them.

### vi.    Conciliation

The parties disagree as to whether evidence that conciliation was national in scope may be

sufficient to show that Defendants received adequate notice of the potential charges against them.

Defendants contend that the scope of conciliation is "irrelevant" to "whether the EEOC exhausted

its administrative remedies by conducting a nationwide investigation of Defendants that would

have reasonably been expected to follow from the charges of discrimination filed with the EEOC."

(Defs.' Reply in Supp. of Mot. to Dismiss at 5.)  The EEOC counters that its conciliation efforts show that Defendants were "on notice and fully appreciated the EEOC was seeking relief for a nationwide class of women."  (EEOC's Resp. to Mot. to Dismiss at 8.)  My instinct is that analyzing the substance of conciliation efforts could help a court determine the scope of the EEOC's investigation and determination, because —  presumably — a defendant-employer would not engage in conciliation efforts on a nationwide scale unless the investigation and determination had led it to believe the charges against it were potentially nationwide in scope.  For the purposes of the instant case, however, I need not decide this particular issue, because I find the EEOC has failed to carry its burden of showing that conciliation efforts were indeed nationwide in scope, and, thus, sufficient to satisfy its administrative prerequisite of putting Defendants on notice of the claims against them.

The EEOC cites the following evidence to show its conciliation efforts were national in scope.  First, two executives from Defendants' headquarters in Tampa, Florida, attended the second conciliation meeting in Denver, Colorado, on June 29, 2006.  (*Id.* at 8; *see* Pls.' Resp. to Mot. for Protective Order, Ex. 11 [6/26/06 Defs.' Letter to EEOC].)  Second, Ms. Weeks declared that the conciliation attempt was "focused on what [Defendants] were willing to change in [their] corporate policies to provide equal training and promotional opportunities for all of its female employees," and that "[t]here was no discussion of implementing any special policies applicable only to the three-state region managed by Mr. Flanagan."  (EEOC's Resp. to Mot. to Dismiss, Ex. 12 ¶ 6 [Weeks Decl.].)

At the outset, I note the parties do not dispute that the first effort at conciliation was focused exclusively on Mr. Flanagan's three-state region.  (*See* Pls.' Resp. to Obj. at 6.)  In fact, on February 2, 2006, the EEOC informed Defendants that it expected "a statistical analysis [would] establish a pattern and practice of gender discrimination *in Tom Flanagan's region.*" (Defs.' Mot. for Protective Order, Ex. M at 3 [2/2/06 EEOC's Letter to Defs.] [emphasis added].)  The EEOC has failed to present *any* evidence that between February 2, 2006, when it penned this letter, and June 29, 2006, when the second conciliation effort took place, it relayed to Defendants a change in its stance regarding the geographic scope of the claims against them.

I now turn to the EEOC's two arguments in support of its view that the second conciliation was national in scope.  First, the appearance of national counsel at a conciliation meeting is, at best, very weak evidence that the controversy was understood to be national in scope.  Common sense tells one that a national company has a national interest in a class action against the company, even when that action is solely regional in scope.  After all, even this regional class action potentially involves twenty-two locations.  (*See* Defs.' Mot. to Dismiss, Ex. H at 2 [4/27/05 Defs.' Letter to EEOC].)  Second, Ms. Weeks' declaration is arguably directly challenged by Mr. Donovan's affidavit, which states:

> Defendants indicated to the EEOC that Defendants would be willing to make certain prospective changes in order to satisfy the equitable relief sought by the EEOC . . . in Flanagan's region above and beyond what was already done in the region.  Defendants never stated that they would agree to make these changes on a nationwide basis; nor did the EEOC ask that these changes be made on a nationwide basis.

(Defs.' Reply in Supp. of Protective Order Mot., Ex. 1 ¶ 8 [Donovan Aff.].)  Considering the

evidence presently before the court, I find both Ms. Weeks' and Mr. Donovan's understandings of

the scope of the conciliation equally plausible.  It is, however, *the EEOC's burden* to show

adequate notice.  *See Am. Nat'l Bank*, 652 F.2d at 1185.  Equally plausible conflicting affidavits

are clearly are insufficient to carry this burden.  Based on the foregoing, I find the EEOC failed

adequately to notify Defendants of the potential national scope of the charges against them, and

is, therefore, limited to seeking legal redress on a regional basis.  I suggest that, in the future, the

EEOC take the simple precaution of putting in writing the geographic scope of the claims against

defendant-employers, so as to make sure all parties are on the same page during conciliation.[4]

Clearly, the threat of a national class action is a greater incentive to conciliate than the threat of a

regional class action.  Defendants' motion to dismiss is granted.

_____

[4]In response to Defendants' objection to the magistrate's order, the EEOC argues that "when a [d]efendant complains that it has not has had a fair opportunity to engage in conciliation regarding the charge or some claim alleged, the courts have ordered the case stayed for the parties to engage in additional conciliation discussions."  (EEOC's Resp. to Obj. at 9.)  In support of this proposition, the EEOC cites *Zia*, 582 F.2d at 534–35 and *EEOC v. Prudential Fed. Sav. & Loan Assoc*. 763 F.2d 1166, 1169 (10th Cir. 1985), in which the Tenth Circuit found that when the EEOC makes an effort to conciliate, but fails to conciliate in good faith, the minimal jurisdictional prerequisites are met, and the court is to stay the proceedings to allow informal conciliation to be reopened with direction for such conciliation to occur in good faith.  (*Id.*)  I note that my finding here is *not* that the EEOC failed to conciliate in good faith, but that it failed to put Defendants on notice of the nationwide scope of the potential legal claims against them.  The EEOC does not contest that proper notice to a defendant-employer of the charges against it is a jurisdictional prerequisite to the EEOC filing suit against that employer.  (*See* EEOC's Resp. to Mot. to Dismiss at 11–12.)  The EEOC has pointed to no case, and my research has revealed none, finding that failure to meet this jurisdictional prerequisite should lead this court to stay the proceedings, rather than dismiss the offending claims.  (*See id.*)

*c.*     *Objection to Magistrate's Order*

Defendants seek a reversal of the magistrate's order and a protective order prohibiting Plaintiffs from seeking to discover information relating to Outback restaurants outside of the three-state region of Colorado, Wyoming, and Montana.  (Defs.' Obj.)   Due to my ruling on Defendants' motion to dismiss, this objection is now moot.

*3.*     *Conclusion*

Based on the foregoing it is therefore ORDERED that:

1.     EEOC's motion to strike or, in the alternative, file a surreply (#152) is GRANTED in part;

2.     Defendants' motion to dismiss EEOC's nationwide claims (#112) is GRANTED; and

3.     Defendants' objection to the Magistrate's Order (#48) is denied as MOOT.

Dated this 2nd day of November, 2007.

                                   BY THE COURT:


                                   s/ Edward W. Nottingham
                                   EDWARD W. NOTTINGHAM
                                   Chief United States District Judge